UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERLE RALPH FERGUSON,<br><br>                                 Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; STEVE HETHERINGTON; TOM PEROSKY; and KEVIN LANEY,<br><br>                                Defendants. | Case No.: 15cv1253 JM (DHB)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S BIVENS CLAIMS; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FTCA CLAIMS** |

On June 4, 2015, Plaintiff filed a complaint against the United States of America and three Deputy U.S. Marshals ("DUSM"), alleging constitutional violations and tort claims based on his arrest in San Diego pursuant to a bench warrant issued by the United States District Court for the Western District of Michigan. (Doc. No. 1.) On October 20, 2015, DUSMs Steve Hetherington, Tom Perosky, and Kevin Laney ("Defendants") and Defendant United States of America ("the United States") filed separate motions to dismiss. (Doc. Nos. 11, 12.) Plaintiff filed oppositions to both motions on April 4, 2016.

///

///

///

1

(Doc. Nos. 24, 25.)  Defendants filed replies on April 19, 2016.[1]  The motions were fully briefed and found suitable for resolution without oral argument pursuant to Local Civil Rule 7.1.d.1.  For the reasons set forth below, the court grants Defendants' motion to dismiss the Bivens[2] claims, (Doc. No. 11), and grants in part and denies in part the United States' motion to dismiss the Federal Torts Claims Act ("FTCA") claims, (Doc. No. 12).

## BACKGROUND[3]

Plaintiff Marle Ralph Ferguson alleges the following: Plaintiff is a United States citizen and resident of the County of San Diego, California, and a party in a civil breach of contract suit brought in diversity in the United States District Court, Western District of Michigan.  He brings this suit against the United States under the FTCA, and against DUSMs Hetherington, Perosky and Laney in their capacity as federal officers within the meaning and scope of Bivens.

On August 30, 2012, District Judge Robert J. Jonker of the Western District of Michigan found Plaintiff in civil contempt for failure to produce certain financial records and submit to the opposing (private) party's debtor examination.  On December 28, 2012, Judge Jonker issued a civil commitment order/bench warrant ("arrest warrant") and attached orders which clearly indicated Plaintiff's offense as one of civil contempt arising from a private action for breach of contract brought in diversity.  U.S. Marshal Service ("USMS") Policy Directive 11.3 and Federal Rule of Civil Procedure 4.1(b) expressly precluded execution of the arrest warrant in California or anywhere else outside the state

---

[1] On April 19, 2016, the parties filed a join motion to extend Defendants' time to file replies by one day, explaining that Defendants' counsel experienced problems with the court's electronic filing system.  For good cause shown, Defendants' replies are hereby deemed timely.

[2] In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the United States Supreme Court held that individuals may sue to recover monetary damages for violations of their constitutional rights by federal officials.

[3] The facts in this section are drawn from the relevant complaints and submissions from the parties, and, at this stage, are taken as true to the extent they are well pleaded.

of Michigan (and 100 mile range).

In January 2013, DUSM Perosky contacted Plaintiff to demand that he voluntarily travel to Michigan and surrender to USMS custody. On at least six occasions prior to Plaintiff's arrest, and beginning in January 2013, Plaintiff's counsel contacted DUSM Perosky and conveyed that federal law unambiguously prohibits service of the civil commitment order upon Plaintiff in California. On May 21, 2013, DUSMs Perosky and Hetherington requested assistance from USMS, Southern District of California, in locating and arresting Plaintiff.

On September 13, 2013, DUSM Laney and others entered Plaintiff's residence in Encinitas, California, and arrested him. Plaintiff was transported to GEO Corrections Western Region Detention Facility ("GEO") in San Diego, California, where he was detained for fifty-one days. On September 17, 2013, a detention hearing was held before Magistrate Judge William V. Gallo. Assistant United States Attorney ("AUSA") Michael Wheat contested Plaintiff's bail request, and Judge Gallo ordered Plaintiff to be held in custody without bail pending a removal/ID hearing. Defendants state there is no evidence that the issue of geographic limitation of the arrest warrant was ever mentioned or discussed at this hearing. On October 24, 2013, Plaintiff filed a petition for writ of habeas corpus, challenging his illegal arrest and detention for lack of jurisdiction. On November 1, 2015, Judge Gallo held an unscheduled telephonic hearing and ordered Plaintiff's immediate release from custody.

Plaintiff alleges the following tort claims against the United States under the FTCA: (1) false imprisonment, (2) negligence, (3) assault, (4) battery, and (5) intentional infliction of emotional distress ("IIED"). Plaintiff also alleges Fourth and Fifth Amendment violations against DUSMs Hetherington, Perosky and Laney in their capacity as federal officers within the meaning and scope of <u>Bivens</u>. Plaintiff seeks damages, including $4.2 million in general and compensatory damages, and $2.1 million in lost business profits, loss of business contracts, loss of income, and loss of earning capacity; costs; and punitive damages against DUSMs Hetherington, Perosky and Laney.

# LEGAL STANDARDS

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings. To overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. See id. at 678–79. The court should grant relief under Rule 12(b)(6) if the complaint lacks either a cognizable legal theory or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

When ruling on a motion to dismiss, the court must take all allegations as true and construe them in the light most favorable to the plaintiff. See Metlzer Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). "Review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." Id.

Federal Rule of Civil Procedure 15 provides that courts should freely grant leave to amend when justice requires it. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). Amendment may be denied, however, if amendment would be futile. See id.

# DISCUSSION

## A. Request for Judicial Notice

Federal Rule of Evidence 201 provides that courts may take judicial notice of facts

that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination. See Fed. R. Evid. 201(b). The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). Matters of public record are proper subjects of judicial notice, but a court may take notice only of the existence and authenticity of an item, not the truth of its contents. See Lee v. City of Los Angeles, 250 F.3d 668, 689–90 (9th Cir. 2001). Under these rules, courts may take judicial notice of "the records and reports of administrative bodies." United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (quotation marks omitted).

Defendants request that the court take judicial notice of two items: (1) the arrest warrant issued by the Western District of Michigan, (Doc. No. 11, Ex. A), and (2) the order denying a motion to quash the arrest warrant issued by the Western District of Michigan, (Doc. No. 11, Ex. C). Plaintiff does not oppose Defendants' request.

These items are appropriate for judicial notice because they are matters of public record, and the parties do not dispute their authenticity. Accordingly, Defendants' request for judicial notice, (Doc. No. 11-5), is granted.

**B. Plaintiff's Bivens Claims**

First, the court addresses Defendants' motion to dismiss Plaintiff's Fourth and Fifth Amendment claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

**1. Summary of Main Arguments**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "An arrest, of course, qualifies as a 'seizure' of a 'person' under this provision, and so must be reasonable under the circumstances." Ashcroft v. al-Kidd, 563 U.S. 731, 735–36 (2011) (internal citations omitted). In order to establish liability under a Bivens theory, Plaintiff must set forth sufficient facts, which if true, would establish that his arrest was unreasonable. Id.

The Fifth Amendment provides, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Only official conduct that "shocks the conscience" is cognizable as a substantive due process violation under the Fifth Amendment.  Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

In essence, Plaintiff alleges that Defendants' pursuit and arrest of Plaintiff, which resulted in his fifty-one day detention, violated his Fourth and Fifth Amendment rights.  Plaintiff contends, as a threshold matter, that Defendants did not have jurisdiction to pursue, arrest, and detain Plaintiff in California pursuant to a warrant issued by the Western District of Michigan, where the warrant was for civil contempt arising from Plaintiff's failure to appear in a private breach of contract dispute not involving federal law.

Specifically, Plaintiff contends Defendants are in violation of 28 U.S.C. § 566 and Federal Rule of Civil Procedure 4.1(b).  28 U.S.C. § 566 authorizes USMS to execute all domestic civil process in compliance with the Federal Rules of Civil Procedure.

> *Except as otherwise provided by law or Rule of Procedure*, the United States Marshals Service shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties.

28 U.S.C. § 566 (emphasis added).

Additionally, Federal Rule of Civil Procedure 4.1(b), entitled "Enforcing Orders: Committing for Civil Contempt," provides:

> An order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and enforced in any district. Any other order in a civil-contempt proceeding may be served only in the state where the issuing court is located or elsewhere in the United States within 100 miles from where the order was issued.

Fed. R. Civ. P. 4.1(b).

As to the Fourth Amendment, Plaintiff argues Defendant's arrest of Plaintiff

outside of and more than 100 miles away from the Western District of Michigan is sufficient to demonstrate Plaintiff's arrest and detention were unreasonable as a matter of law.  Additionally, Plaintiff's counsel allegedly informed DUSM Perosky about the 100-mile geographic limitation of the arrest warrant on at least six occasions prior to his arrest.  As to the Fifth Amendment, Plaintiff contends an illegal fifty-one day detention presumptively "shocks the conscience."  Plaintiff argues Defendants' failure to understand the law and rules governing their conduct does not excuse them from compliance therewith, and therefore, their illegal pursuit, arrest, and detention of Plaintiff constitute violations of his Fifth Amendment due process rights.

Defendants respond that Plaintiff's Bivens claims against the DUSMs must be dismissed as they are brought solely as an attempt to plead around judicial and prosecutorial immunity.  Defendants point out that the arrest warrant issued by Judge Jonker was captioned United States of America v. Merle Ferguson and "commanded" "any authorized law enforcement officer" to arrest Plaintiff.  The arrest warrant did not include information about any geographic limitation and listed the United States in the caption despite it not being a party to the action.  As such, the face of the warrant did not state or imply that it was geographically limited in any way, or even that it was a civil contempt arrest warrant as opposed to a criminal contempt warrant.  Defendants argue it would be unreasonable to require the DUSMs to research every underlying case to determine whether they can execute a facially valid arrest warrant in the absence of special instructions.

Defendants thus move to dismiss Plaintiff's Bivens claims on two grounds.  First, Defendants contend Plaintiff has failed to allege sufficient facts which, if true, could establish that Defendants violated Plaintiff's Fourth or Fifth Amendment rights.  Second, Defendants argue Plaintiff's claims against Defendants are barred by the doctrines of qualified immunity and absolute quasi-judicial immunity.  In order to prevail against Defendants, Plaintiff must defeat Defendants' defense of qualified immunity.  As such, the court addresses the question of immunity first.

### 2. Qualified Immunity

The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." Saucier v. Katz, 533 U.S. 194, 201 (2001).  First, a court must determine whether the plaintiff has alleged a violation of an actual constitutional right.  Id.  "If no constitutional right would have been violated were the allegations established," then the officer is entitled to qualified immunity.  Id.  Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  Id.  While the two-step sequence for determining qualified immunity claims is often appropriate, "courts may exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand."  Id. at 236.  Failure of either prong will negate Plaintiff's eligibility to recover damages.  See Hamby v. Hammond, 821 F.3d 1085, 1090 (9th Cir. 2016).

The court takes up the "clearly established" prong of the qualified immunity analysis first.  A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012).  While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate."  al-Kidd, 563 U.S. at 741.  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).   The Supreme Court has repeatedly instructed courts not to define clearly established law at a high level of generality.  See al-Kidd, 563 U.S. at 742.  "The dispositive question is whether the violative nature of *particular* conduct is clearly established."  Mullenix, 136 S. Ct. at 308 (internal quotations omitted).   This specific inquiry is especially important in the Fourth Amendment context, where the Supreme Court has recognized that "[i]t is

sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Saucier, 533 U.S. at 205.

At its core, Defendants argue, this case is about whether or not Judge Jonker mistakenly issued an arrest warrant that directed Defendants to arrest Plaintiff, whether or not AUSA Wheat mistakenly contested Plaintiff's bail request, and whether or not Judge Gallo mistakenly denied that request. Defendants suggest Plaintiff brings this action against Defendants—DUSMs who simply fulfilled their duties by enforcing a facially valid court order—as a way to sidestep the doctrines of judicial and prosecutorial immunity.

Plaintiff provides a one-paragraph response to Defendants' qualified immunity defense, merely arguing that Defendants are not eligible for the defense because they were not engaged in a "discretionary function" when they pursued and arrested Plaintiff. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding that "government officials performing *discretionary functions* generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (emphasis added)). Plaintiff contends that the discretionary function exception does not extend to "[a]n action specifically prescribed by a federal statute, regulation, or policy." See Marlys Bear Medicine v. U.S. ex rel. Secretary of Dept. of Interior, 241 F.3d 1208, 1213 (9th Cir. 2001) (discussing "discretionary function" in context of FTCA). Plaintiff submits that Defendants are not immunized by the discretionary function exception because the territorial limitations imposed by Federal Rule of Civil Procedure 4.1(b) are not discretionary in nature, and provide a specific course of action.

Plaintiff's argument misses the mark. To defeat Defendants' qualified immunity defense, Plaintiff must allege sufficient facts to show Defendants violated a "clearly established" constitutional right by carrying out the arrest warrant at issue. The dispositive question is not whether or not Defendants' conduct violated Federal Rule of Civil Procedure 4.1(b). Rather, the question is whether, at the time of Plaintiff's arrest, it

was "beyond debate" that Defendants' act of carrying out the arrest warrant at issue would violate Plaintiff's Fourth and Fifth Amendment rights. See Mullenix, 136 S. Ct. at 309 (holding that where reasonableness of official's conduct is at issue, the relevant question "is whether existing precedent placed the conclusion that [the official] acted unreasonably in these circumstances 'beyond debate'" (quoting al-Kidd, 563 U.S. at 741)). In other words, under the circumstances of this case, would every reasonable official have understood that what they were doing violated Plaintiff's Fourth and Fifth Amendment rights? See Reichle, 132 S. Ct. at 2093.

The answer to that question is "no." First, the arrest warrant, albeit mistakenly, was executed on the judicial form AO442, which is the form for criminal, not civil, arrest warrants, and listed the United States of America as a party in the caption, although it was not a party to the action. (See Doc. No. 11, Ex. A.) The arrest warrant did not include any reference to a "civil commitment order" nor to any mileage or geographic limitation. It simply "commanded" "[a]ny authorized law enforcement officer" to arrest and bring Merle Ferguson before a United States magistrate judge. (See id.) Plaintiff contends Defendants violated Federal Rule of Civil Procedure 4.1(b) and USMS Policy Directive 11.3 by enforcing what should have been a civil commitment order outside its jurisdictional limits, but he fails to cite any authority to support the argument that Defendants violated a "clearly established" right by failing to inquire into the arrest warrant to determine whether it was for civil contempt. Plaintiff has cited no existing precedent, and the court is aware of none, which provides that a DUSM's failure to conduct an independent investigation into an arrest warrant before enforcing it violates a "clearly established" right. See al-Kidd, 563 U.S. at 741 (holding that while "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate").

Further, even if Defendants had conducted an inquiry into the arrest warrant, it appears that the proper construction of Rule 4.1(b) is not "beyond debate" either. As Judge Jonker noted in the order denying Plaintiff's motion to quash the arrest warrant

10

issued by the Western District of Michigan, "[t]here is no clearly established authority from the Supreme Court or from any Circuit of the Court of Appeals on how to apply Rule 4.1(b) in this unique context." (See Doc. No. 11, Ex. C.)  As cited by Defendants, at least one court has authorized nationwide enforcement of a civil contempt citation arising out of an underlying contract dispute.  See CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship, 2013 WL 324061, at *2–3 (S.D.N.Y. Jan. 24, 2013).

Finally, the allegation that Plaintiff's counsel conveyed the jurisdictional limitations of the arrest warrant to DUSM Perosky is not consequential for the purposes of qualified immunity analysis.  Plaintiff's counsel's interpretation of the law does not constitute binding precedent that places a constitutional question "beyond debate."  See al-Kidd, 563 U.S. at 741.

In conclusion, Plaintiff has not successfully alleged that Defendants violated a "clearly established" right.  Because Plaintiff's Fourth and Fifth Amendment claims are based on Defendants' same conduct—the enforcement of the arrest warrant at issue—Defendants are entitled to qualified immunity with respect to both claims.[4]  As such, Plaintiff's Bivens claims are dismissed.  Because it appears Plaintiff cannot allege a plausible Bivens claim if leave to amend were granted, Plaintiff's Bivens claims are dismissed without leave to amend.

---

[4] Although not necessary, the court notes that Plaintiff's Bivens claims are also barred by the doctrine of absolute quasi-judicial immunity.  The Ninth Circuit held in Engebretson v. Mahoney, 724 F.3d 1034, 1039 (9th Cir. 2013), that prison officials charged with executing facially valid court orders enjoy absolute immunity from liability for conduct prescribed by those orders.  The Ninth Circuit discussed how absolute immunity may apply even if the order at issue is later overturned or invalid.  See id. at 1039 n.3 (citing Bush v. Rauch, 38 F.3d 842, 847–48 (6th Cir. 1994) (absolute immunity for probate official who enforced court order requiring that juvenile be placed in detention home, even though subsequent investigation revealed that court order was based on incomplete information)).  As discussed above, despite the disagreement on the ultimate validity of the arrest warrant, the arrest warrant was facially valid, and therefore, Defendants are protected from liability under absolute quasi-judicial immunity.

**C. Plaintiff's FTCA Claims**

Plaintiff brings his FTCA action against the United States based on the alleged misconduct of DUSMs Hetherington, Laney, and Perosky in the arrest and detention of Plaintiff. Plaintiff has alleged the following tort claims: (1) false imprisonment, (2) negligence, (3) assault, (4) battery, and (5) IIED.

The United States moves to dismiss Plaintiff's FTCA claims pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). First, the United States contends Plaintiff's claims are precluded under the due care, intentional torts, and independent contractor exceptions to the FTCA. Second, the United States contends that Plaintiff's allegations are insufficient to state a tort claim under the FTCA against the United States for Plaintiff's arrest and detention.

The court addresses the threshold 12(b)(1) issues first.

**1. Dismissal Under Federal Rule of Civil Procedure 12(b)(1)**

   **a. Due Care Exception to the FTCA**

The United States, as a sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Berti v. V.A. Hosp., 860 F.2d 338, 339 (9th Cir. 1988). The FTCA waives the sovereign immunity of the United States in tort actions and vests federal district courts with exclusive jurisdiction over suits arising from the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The FTCA is subject to a number of exceptions, including the due care exception, which eliminates "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). This exception applies if (1) the statute or regulation in question "specifically proscribes a course of action for an

officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." Welch v. United States, 409 F.3d 646, 652 (4th Cir. 2005). If due care was exercised, sovereign immunity is not waived. Id.

Plaintiff and the United States advance the same arguments addressed in the context of Plaintiff's Bivens claims. In essence, the United States contends that the DUSMs exercised due care in following the dictates of 28 U.S.C. § 566(a), which provides that the primary role and mission of the USMS is "to provide for the security and to obey, execute, and enforce all orders of the United States District Courts . . . as provided by law." 28 U.S.C. § 566(a). Additionally, the USMS "shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties." Id. § 566(c). Finally, 28 C.F.R. § 0.111 provides:

> The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including:
>
> (a) Execution of Federal arrest warrants pursuant to rule 4 of the Federal Rules of Criminal Procedure, Federal parole violator warrants pursuant to section 4206 of title 18 U.S. Code, and Federal custodial and extradition warrants as directed.
> (b) The service of all civil and criminal process emanating from the Federal judicial system including the execution of lawful writs and court orders pursuant to section 569(b), title 28, U.S. Code.

28 C.F.R. § 0.111.

The United States contends that the DUSMs' enforcement of a facially valid arrest warrant issued by a federal judge, which did not identify any geographic limitations, shows that they exercised due care in following the dictates of 28 U.S.C. § 566 and 28 C.F.R. § 0.111. The United States further argues that there are no specific allegations to show that DUSM Laney, or any other DUSM serving the arrest warrant, knew of the

///
///
///

geographic limitation.[5]

Plaintiff counters that the DUSMs acted directly against the dictates of Federal Rule of Civil Procedure 4.1(b) by executing a warrant issued for civil contempt in a case brought in diversity and more than 100 miles away from the issuing court and that therefore the due care exception to the FTCA does not apply.  See Fed. R. Civ. P. 4.1(b).

While Plaintiff has not alleged a violation of a "clearly established" right based on Defendants' conduct, at this stage the court concludes that Plaintiff has alleged sufficient facts to avoid the "due care" exception to the FTCA.  Specifically, Plaintiff has alleged that on at least six occasions prior to Plaintiff's arrest, Plaintiff's counsel contacted DUSM Perosky and conveyed that federal law unambiguously prohibits service of the civil commitment order upon Plaintiff in California.  Taking Plaintiff's allegations as true, the court may draw the reasonable inference that the DUSMs did not exercise due care in investigating the arrest warrant after being put on notice regarding its jurisdictional limitations.[6]

### b.  Intentional Torts Exception to the FTCA

Section 2680(h) of the FTCA provides that the government is not liable for:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse

---

[5] Plaintiff does not allege conveying the geographic limitation of the arrest warrant to anyone but DUSM Perosky.

[6] The United States, in discussing the independent contractor doctrine, notes that Plaintiff has set forth no allegations that the United States violated the FTCA through the actions of GEO.  The court agrees and concludes that Plaintiff has not pleaded actionable claims against the United States based on events that occurred while Plaintiff was in GEO's detention facility.

of process, or malicious prosecution.

28 U.S.C. § 2680(h).

The FTCA defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law. Id. Judges are not "investigative or law enforcement officers" when they act "adjudicatively" within the meaning of Section 2680(h). See Arnsberg v. United States, 757 F.2d 971, 978, n.5 (9th Cir. 1985). Therefore, the United States contends, Plaintiff's assault, battery, and false imprisonment claims should be dismissed to the extent they are premised on the acts or omissions of judicial officials.

Plaintiff does not address this argument except to state that his claim is not based on any acts or omissions of judges or prosecutors. The United States responds that Plaintiff's concession eliminates any of Plaintiff's claims relating to the forty-five days he spent in custody after Judge Gallo denied bail.

The United States' point is well taken. The court finds, however, that the intentional torts exception to the FTCA does not constitute a threshold bar to Plaintiff's assault, battery, and false imprisonment claims to the extent they are sufficiently pleaded based on the conduct of Defendants, not the act or omission of judges or prosecutors. The court will address the sufficiency of Plaintiff's intentional tort claims below.

**2. Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

    **a. False Imprisonment**

Plaintiff brings a false imprisonment claim against the United States based on his arrest and fifty-one day detention at GEO Corrections.[7]

---

[7] As discussed above, Plaintiff's false imprisonment claim is not actionable against the United States to the extent it is based on judicial or prosecutorial conduct. Therefore, the court addresses the false imprisonment claim only to the extent it relates to Plaintiff's allegedly unlawful arrest by the DUSMs.

15

Under California law, the elements of false imprisonment are: (1) the nonconsensual, intentional confinement of person; (2) without lawful privilege; and (3) for an appreciable period of time. Tekle v. U.S., 511 F.3d 839, 854 (9th Cir. 2007) (citing Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 495 (2000)). A false arrest is one way of committing the tort of false imprisonment. Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001).

The FTCA specifically permits liability for false arrest when committed by federal law enforcement officers. See 28 U.S.C. § 2680(h). Under the FTCA, "[l]iability is determined by the tort law of the state where the claim arose." Gasho v. United States, 39 F.3d 1420, 1427 (9th Cir. 1994). In general, the United States is liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, the Ninth Circuit has held that "[law enforcement] obligations make the law of citizen arrests an inappropriate instrument for determining FTCA liability." Arnsberg v. United States, 757 F.2d 971, 979 (9th Cir. 1985). California law "protects a law enforcement officer from liability for false arrest . . . where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful." Cervantes v. United States, 330 F.3d 1186, 1188 (9th Cir. 2003).

For the same reasons discussed in the context of Plaintiff's Bivens claims, the court concludes the DUSMs had reasonable cause to believe Plaintiff's arrest was lawful based on the facially valid arrest warrant. Accordingly, Plaintiff's false imprisonment claim is dismissed with leave to amend.

### b. Negligence

To state a claim for negligence under California law, Plaintiff must show: (1) a legal duty to use due care; (2) breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care. Brown v. Ransweiler, 171 Cal. App. 4th 516, 534 (2009).

The United States contends Defendants' arrest of Plaintiff was reasonable, and therefore any negligence claim must be dismissed. Plaintiff responds that no reasonable

official could have interpreted the arrest warrant to authorize service in California since the face of the warrant plainly referred to a civil case.  As already discussed, based solely on the face of the arrest warrant, Defendants' conduct was not unreasonable.  However, Plaintiff has alleged that on at least six occasions prior to Plaintiff's arrest, Plaintiff's counsel contacted DUSM Perosky and conveyed that federal law unambiguously prohibits service of the civil commitment order upon Plaintiff in California.  For the purposes of a negligence action, the court deems these allegations sufficient at this stage to demonstrate that the information conveyed by Plaintiff's counsel created a duty on the part of Defendants to use reasonable care by conducting an inquiry into the matter.  As such, the United States' motion to dismiss Plaintiff's negligence claim is denied.

### c. Battery and Assault

Under California law, the elements of the tort of assault are: (1) the defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact; and (2) the plaintiff was put in imminent apprehension of such contact.  Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).  The elements of battery are: (1) the defendant intentionally performed an act that resulted in a harmful or offensive contact with plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff.  Brown, 171 Cal. App. 4th at 526–27.  To allege a battery action against a law enforcement officer, a plaintiff must also show the use of unreasonable force.  Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998).

The United States correctly points out that Plaintiff has failed to allege the use of unreasonable force.  Plaintiff responds that in an unlawful arrest scenario, any force may constitute a "technical battery," regardless of whether it was reasonably imposed in the context of the arrest.  See Micalizzi v. Ciamarra, 206 F. Supp. 2d 564, 581–82 (S.D.N.Y. 2002) ("If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute a battery, regardless of whether the force is considered reasonable as applied during a lawful arrest.").

As already discussed, Plaintiff has been unable to establish that his arrest was unlawful. Therefore, in the absence of use of unreasonable force allegations, Plaintiff's battery and assault claims cannot survive. Accordingly, Plaintiff's battery and assault claims are dismissed with leave to amend.

### d. IIED

The elements of the tort of IIED are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Trerice v. Blue Cross of California, 209 Cal. App. 3d 878, 883 (1989). Outrageous conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized society." Id.

The United States moves to dismiss the IIED claim on the ground that Plaintiff has not alleged outrageous conduct by Defendants. The court agrees. While Plaintiff's allegations, taken as true, may establish a claim of negligence, Plaintiff has alleged no facts to show Defendants' allegedly mistaken or negligent execution of the arrest warrant at issue constitutes conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized society." See id.

As such, Plaintiff's IIED claim is dismissed with leave to amend.

///
///
///
///
///
///
///
///
///

# CONCLUSION

1) Plaintiff's <u>Bivens</u> claims are dismissed without leave to amend;
2) Plaintiff's false imprisonment, battery and assault, and IIED claims are dismissed with leave to amend.
3) Plaintiff's negligence claim survives.
4) Plaintiff may file an amended complaint within 14 days of the entry of this order.

**IT IS SO ORDERED.**

DATED:  September 14, 2016

JEFFREY T. MILLER
United States District Judge