# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERLE RALPH FERGUSON,<br><br>                       Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                       Defendant. | Case No.: 15cv1253 JM (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant United States of America ("the United States") moves the court for summary judgment or, in the alternative, partial summary judgment. (Doc. No. 59.) Plaintiff Merle Ralph Ferguson opposes. (Doc. No. 68.) Having carefully considered the matters presented, the court record, and the arguments of counsel, the court grants the United States' motion for summary judgment.

## BACKGROUND

Plaintiff brings this suit against the United States for negligence under the Federal Torts Claims Act ("FTCA").

On August 30, 2012, District Judge Robert J. Jonker of the Western District of Michigan found Plaintiff in civil contempt for failure to produce certain financial records

1

and submit to the opposing (private) party's debtor examination. (Doc. No. 59, Ex. C at 11–16.)[1] On December 28, 2012, Judge Jonker issued a civil commitment order/bench warrant ("arrest warrant") and attached orders that clearly indicated Plaintiff's offense was one of civil contempt arising from a private action for breach of contract brought in diversity. (Doc. No. 59, Ex. C at 2–7.) Federal Rule of Civil Procedure 4.1(b) and United States Marshal Service ("USMS") Policy Directive 11.3 expressly preclude execution of an arrest warrant for civil contempt in a diversity action in California or anywhere else outside the state of Michigan (and 100 mile range). The arrest warrant here was issued on form AO 442. (Doc. No. 59, Ex. B.) Form AO 442 is used for criminal arrest warrants. (Doc. No. 59-2 ("Laney Decl.") ¶ 6.) Federal Rule of Criminal Procedure 4(c)(2) and USMS Policy Directive 8.3 allow for nationwide service of criminal arrest warrants.

In January 2013, Deputy U.S. Marshal ("DUSM") Perosky contacted Plaintiff to demand that he voluntarily travel to Michigan and surrender to USMS custody. Plaintiff's counsel asserts that, beginning in January 2013, on various occasions prior to Plaintiff's arrest, Plaintiff's counsel contacted DUSM Perosky and conveyed that federal law unambiguously prohibits service of the civil commitment order upon Plaintiff in California. (Doc. No. 69, Exs. 7–8.) DUSM Perosky declares that, prior to Plaintiff's arrest, he was not aware of any geographic limitation that would prohibit execution of the arrest warrant. (Doc. No. 59-3 ("Perosky Decl.") ¶ 13.) According to DUSM Perosky, Plaintiff's counsel never raised any limitations on the arrest warrant during their multiple conversations. (Perosky Decl. ¶ 17.) On May 21, 2013, DUSMs Perosky and Hetherington requested assistance from USMS, Southern District of California, in locating and arresting Plaintiff.

On September 13, 2013, DUSM Laney and others entered Plaintiff's residence in Encinitas, California, and arrested him. Plaintiff was transported to GEO Corrections Western Region Detention Facility in San Diego, California, where he was detained for approximately fifty days. On September 17, 2013, a detention hearing was held before

---

[1] Pagination refers to that generated by CM/ECF.

Magistrate Judge William V. Gallo. Assistant United States Attorney ("AUSA") Michael Wheat contested Plaintiff's bail request, and Judge Gallo ordered Plaintiff to be held in custody without bail pending a removal/ID hearing. On October 24, 2013, Plaintiff filed a petition for writ of habeas corpus, challenging his illegal arrest and detention for lack of jurisdiction. On November 1, 2015, Judge Gallo held an unscheduled telephonic hearing and ordered Plaintiff's immediate release from custody.

In his complaint, Plaintiff alleged the following tort claims against the United States under the FTCA: (1) false imprisonment, (2) negligence, (3) assault, (4) battery, and (5) intentional infliction of emotional distress. Plaintiff also alleged Fourth and Fifth Amendment violations against DUSMs Hetherington, Perosky and Laney in their capacity as federal officers within the meaning and scope of Bivens. After motions to dismiss brought by the United States and the individual defendants, only the negligence claim against the United States remains.

## LEGAL STANDARDS

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). But Federal Rule of Civil Procedure 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).

In response to a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citations omitted). In other words, the nonmoving party may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045

(9th Cir. 1989). The court must examine the evidence in the light most favorable to the nonmoving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## DISCUSSION

### A. Evidentiary Objections

The United States objects to Plaintiff's Exhibits 7, 8, and 9. (Doc. No. 70.)

The United States objects to all three documents as lacking authentication because Plaintiff did not submit a declaration or any other means of authenticating Exhibits 7–9. However, Plaintiff subsequently filed a declaration by his counsel ("Wright Declaration") authenticating the exhibits at issue. (Doc. No. 73 ("Wright Decl.").) The United States did not object to the late filing of the Wright Declaration. Robert Wright, Plaintiff's counsel, demonstrates personal knowledge of each contested exhibit's contents as the author of Exhibits 7 and 9 and as the billing recipient of the telephone account statement generated by AT&T in Exhibit 8. Therefore, the court overrules the United States' objections to these exhibits for lack of authentication.

The United States' evidentiary objections "are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded," (see Doc. No. 70), which provides a basis for the court to overrule them. United States v. HVI Cat Canyon, Inc., 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016); see also Amaretto Ranch Breedables v. Ozimals, Inc., 907 F.Supp.2d 1080, 1081 (N.D. Cal. 2012) ("This Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development, and the Court accordingly summarily overrules the objections.") (internal citations omitted). However, assuming the United States had raised proper evidentiary objections, the court overrules the objections to Exhibits 7–8 and sustains the objection to Exhibit 9.

///

///

### 1. Exhibit 7—Call Log

Exhibit 7 to Plaintiff's opposition consists of a copy of Mr. Wright's call log containing notes about his communications with DUSM Perosky before and after Plaintiff's arrest. (Wright Decl. ¶ 4; Doc. No. 69, Ex. 7.) Plaintiff offers the call log as evidence that his attorney informed DUSM Perosky about the geographical limitation on the arrest warrant multiple times <u>before</u> Plaintiff's arrest. Although the United States objects to the call log as inadmissible hearsay, it fits within the business records exception.

Under this exception, a document is admissible if its proponent shows: (1) that the record was made at or near the time of the event; (2) that the record was made by or from information transmitted by a person with knowledge; (3) that the record was kept in the course of a regularly conducted activity of a business or organization; and (4) that it was a regular practice of that business or organization to make such a record. Fed. R. Evid. 803(6). For a business record to be admissible, the proponent must show two foundational facts: "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." <u>Sea–Land Serv., Inc. v. Lozen Intern., LLC</u>, 285 F.3d 808, 819 (9th Cir. 2002).

Here, Plaintiff has established these foundational facts through the Wright Declaration. Mr. Wright declares that the notes in the call log "were taken contemporaneously by [him] on the dates indicated therein and maintained in the ordinary course of business." (Wright Decl. ¶ 4.) Through his declaration, Mr. Wright has established that he made the record the same day on which the phone calls took place, he had personal knowledge as a party to the phone call, and that he maintains such call logs in the ordinary course of his business at the Law Office of Robert W. Wright. Therefore, the requirements of Federal Rule of Evidence 803(6) are satisfied and the call log is admissible under the business record exception to hearsay.

Accordingly, the court overrules the United States' evidentiary objection to Exhibit 7.

### 2. Exhibit 8—AT&T Phone Record

Exhibit 8 contains partially redacted telephone account statements generated by AT&T wireless for Mr. Wrights mobile phone account. (Wright Decl. ¶ 5; Doc. No. 69, Ex. 8.) Plaintiff offers the AT&T phone record as evidence that Mr. Wright called DUSM Perosky on various occasions prior to Plaintiff's arrest. The United States objects to Exhibit 8 on the following grounds: lacks authentication, lacks foundation, hearsay, and relevance.

The court overrules the foundation and authentication objections because the Wright Declaration provides authentication from Mr. Wright, who, as the recipient of the record and one who made the calls listed therein, has the requisite personal knowledge to authenticate Exhibit 8.

The court also overrules the relevance objection. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiff asserts that his attorney, Mr. Wright, informed DUSM Perosky of the arrest warrant's geographic limitations before Plaintiff's arrest. The AT&T phone records demonstrating the Mr. Wright did in fact call DUSM Perosky on the dates asserted has a tendency to make the fact of the conversations more probable, and is of consequence in determining this negligence action. As a result, Exhibit 8 is relevant.

Finally, the court overrules the hearsay objection. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. Here, AT&T, as the creator of the phone record, is the out-of-court declarant. The phone record is being offered for the truth of the matter asserted because Exhibit 8 is offered to prove the existence of the calls made by Mr. Wright to DUSM Perosky. (Wright Decl. ¶ 5.) Therefore, Exhibit 8 is hearsay.

However, the AT&T phone record likely falls under the business records exception. For Exhibit 8 to be admissible, Plaintiff would need some sort of affidavit or declaration

from AT&T setting forth the foundational facts required under the business records exception. See Sea–Land Serv., Inc., 285 F.3d at 819 (listing the two foundational facts). Plaintiff has not submitted any such affidavit or declaration. Therefore, it does not currently meet the requirements of the business records exception.

Nevertheless, the court can still consider Exhibit 8 in ruling on the United States' motion for summary judgment. The court may do so because "[e]ven if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial." AtPac, Inc. v. Aptitude Sols., Inc., 787 F. Supp. 2d 1108, 1111 (E.D. Cal. 2011); see also HVI Cat Canyon, Inc., 213 F. Supp. 3d at 1259 ("[T]o the extent that any of the records attached to the declarations in dispute do not qualify under the public records exception, any deficiencies concerning the records could be cured at trial by having the relevant individual testify as to their contents."). Here, Plaintiff could cure the United States' hearsay objection by having a suitable representative from AT&T testify or submit an affidavit about how AT&T creates phone records and does so in the course of regularly conducted business activity. Because the court may still consider the phone record on this motion for summary judgment, the court overrules the hearsay objection to Exhibit 8.

In sum, the court overrules the United States' objections to Exhibit 8.

### 3. Exhibit 9—Email to Plaintiff's Criminal Counsel

Exhibit 9 contains a copy of an email Mr. Wright wrote and sent to Ward Clay, who acted as Plaintiff's criminal counsel after Plaintiff's arrest. (Wright Decl. ¶ 6; Doc. No. 69, Ex. 9.) The United States objects to Exhibit 9 on the following grounds: lacks authentication, lacks foundation, hearsay, relevance, and calls for a legal conclusion or improper opinion.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiff does not address how Mr. Wright explaining Federal Rule of Civil Procedure 4.1(b) to Mr. Clay is of any consequence to the action before the

7

court. Plaintiff's negligence claim arises from a legal duty allegedly created when Mr. Wright discussed the geographic limitations of the arrest warrant with DUSM Perosky <u>prior</u> to Plaintiff's arrest. What Mr. Wright discussed with Plaintiff's criminal counsel <u>after</u> Plaintiff was arrested has no bearing on that claim. Moreover, Plaintiff does not cite to Exhibit 9 in his opposition brief, giving rise to the question of why it was included as an exhibit in the first place. (<u>See, generally</u>, Doc. No. 68.) Because whether or not Mr. Wright discussed the geographic limitations with Mr. Clay is not a fact of consequence in determining this action, the email in Exhibit 9 is irrelevant.

Consequently, the court sustains the United States' objection to Exhibit 9 as irrelevant.

**B.    Request for Judicial Notice**

The United States requests the court take judicial notice of the following: (1) the documents file in the Western District of Michigan case entitled <u>Korrey v. Ferguson, et al.</u>, 10cv755 RJJ, including but not limited to Exhibits E and G of Doc. No. 59; (2) the documents filed in the Southern District of California case entitled <u>United States v. Ferguson</u>, 13mj3470, including but not limited to Exhibits B and C of Doc. No. 59; and (3) the blank federal court forms AO 442 and AO 445. (Doc. No. 59-5 ("RJN").) Plaintiff does not oppose the United States' request.

Federal Rule of Evidence 201 provides that courts may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination. <u>See</u> Fed. R. Evid. 201(b). The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). Matters of public record are proper subjects of judicial notice, but a court may take notice only of the existence and authenticity of an item, not the truth of its contents. <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689–90 (9th Cir. 2001). Under these rules, courts may take judicial notice of "the records and reports of administrative bodies." <u>United States v. Ritchie</u>, 342 F.3d 903, 909 (9th Cir. 2003) (quotation marks omitted).

These items are appropriate for judicial notice because they are matters of public record, and the parties do not dispute their authenticity. Accordingly, the court grants the United States' request for judicial notice.

### C. Negligent Hiring, Training, and Supervision Claims

The United States argues that the court does not have jurisdiction over Plaintiff's negligent hiring, training, supervision, and investigation claims because the discretionary function exception to the FTCA applies. (Doc. No. 59 at 27.) Plaintiff's negligent investigation claim will be addressed separately.

The FTCA is subject to a number of exceptions, including the discretionary function exception, which eliminates any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Plaintiff "agrees with the United States concerning Ferguson's claims of negligent hiring, training, and supervision." (Doc. No. 68 at 9.) Because there is no dispute, the court grants summary judgment in favor of the United States and against Plaintiff on his negligent hiring, training, and supervision claims.

### D. Negligent Investigation Claim

The parties agree that Plaintiff's negligent hiring, training, and supervision claims are barred under the discretionary function exception, but Plaintiff's negligent investigation claim remains at issue.

#### 1. Judicial Immunity

According to the United States, "[d]espite Plaintiff's attempts to characterize his claims as being against the Marshals for serving the criminal arrest warrant beyond the 100-mile limitation for civil process, this case is and has always been about Plaintiff's challenge to Judge Jonker's decision to issue a criminal arrest warrant related to a contempt order in a civil action.." (Doc. No. 59 at 21.) Based on this view of Plaintiff's negligence claim, the United States argues that judicial immunity applies because the arrest warrant was facially valid and "[w]hether Judge Jonker incorrectly used the criminal arrest warrant

9

form as opposed to the civil arrest warrant form is covered by judicial immunity." (Id. at 20.) Be that as it may, Plaintiff is not challenging the facial validity of the warrant. (See Doc. No. 68 at 7 ("Plaintiff is NOT arguing whether the Warrant is facially valid.").)

Despite the United States' attempts to characterize it otherwise, the claim before the court is one for negligence based on DUSM Perosky's express knowledge of the geographic limitation on the arrest warrant after Plaintiff's counsel allegedly informed him of that limitation. (See Doc. No. 1 ¶¶ 75–77, 80.) Although judicial immunity would apply to Judge Jonker's actions, it is not relevant to the instant motion and does not provide a basis for granting summary judgment.

### 2. Quasi-Judicial Immunity

Next, citing primarily out-of-circuit authority, the United States argues that Plaintiff's claim is barred by quasi-judicial immunity. (Doc. No. 59 at 21–24.)

The Ninth Circuit held in Engebretson v. Mahoney, 724 F.3d 1034, 1039 (9th Cir. 2013), that prison officials charged with executing facially valid court orders enjoy absolute immunity from liability for conduct prescribed by those orders. The Ninth Circuit discussed how absolute immunity may apply even if the order at issue is later overturned or invalid. See id. at 1039 n.3 (citing Bush v. Rauch, 38 F.3d 842, 847–48 (6th Cir. 1994) (absolute immunity for probate official who enforced court order requiring that juvenile be placed in detention home, even though subsequent investigation revealed that court order was based on incomplete information)). In its order on Defendants' motion to dismiss, the court noted that Plaintiff's Bivens claims against the individual DUSMs were barred by the doctrine of absolute quasi-judicial immunity. (Doc. No. 31 at 11 n.4.)

The United States now seeks to apply this immunity to a tort action brought pursuant to the FTCA. In each of the cases discussed by the United States, quasi-judicial immunity was applied to persons sued individually, such as on a Bivens or § 1983 claim. See, e.g., Trapp v. U.S. Marshals Serv., 2005 WL 3179471, at *8 (D. Kan. Nov. 22, 2005) (federal officers sued as individuals pursuant to Bivens granted summary judgment in their favor because quasi-judicial immunity applied). None of the cases cited by the United States

apply quasi-judicial immunity to FTCA claims against the United States. Because quasi-judicial immunity is not cognizable under the FTCA, it does not provide a basis for granting summary judgment.

### 3. Establishing a Legal Duty to Use Due Care

Negligence under California law requires the plaintiff to establish: (1) a legal duty to use due care; (2) breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care. Brown v. Ransweiler, 171 Cal. App. 4th 516, 534 (2009).

At oral argument, Plaintiff, without equivocating, characterized his sole remaining claim as a negligent failure on the part of DUSM Perosky to perform an investigation on whether the arrest warrant, valid on its face, could be executed in California. Essentially, Plaintiff claims DUSM Perosky had a duty to investigate which rules and policies applied to the arrest warrant. The court finds that, regardless of the disputed nature of the communications between Plaintiff's counsel and DUSM Perosky, there was no duty on DUSM Perosky's part to make an independent investigation and corresponding judgment regarding the facially valid arrest warrant issued on a criminal arrest form. Accordingly, Plaintiff has not established that there was a legal duty to use due care on the United States' part.

Plaintiff's negligent investigation claim would have required DUSM Perosky to research the USMS Policy Directives and the Federal Rules of Civil and Criminal Procedure and independently confirm or override the judgment and directive of a U.S. District Judge. Such would subsume a duty of DUSMs to independently investigate the validity of facially valid warrants. To impose on the USMS a duty to ensure facially valid warrants have been properly authorized by a federal judicial officer and issued on the proper form would result in the USMS taking on a judicial function. Plaintiff has not provided any legal authority to support his argument for such a duty which, if breached, would create federal tort liability. In contrast, there is legal authority from the Supreme Court and other circuits that suggests that no such duty exists because a law enforcement

officer's duty is to execute a facially valid arrest warrant. See, e.g., Baker v. McCollan, 443 U.S. 137, 145–46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence. . ."); Hodgdon v. United States, 365 F.2d 679, 685 (8th Cir. 1966) ("We believe it is part of the official duties of a marshal, in criminal as well as civil cases, to execute all warrants which reasonably appear to be valid."); Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 280 (5th Cir. 1992) (police officer acted reasonably in disregarding claims of arrestee that the warrant had been recalled when computer check ran during traffic stop revealed a facially valid arrest warrant); Mitchell v. Aluisi, 872 F.2d 577, 578–79 (4th Cir. 1989) (affirming grant of summary judgment where arrest made pursuant to a facially valid warrant, even though arrestee informed the officers that the warrant had been recalled); In re Roberts Litig., 97 F. Supp. 3d 1239, 1244 (D. Mont. 2015), aff'd, 693 F. App'x 630 (9th Cir. 2017) (defendant "executed a facially valid warrant consistent with his duty as a law enforcement officer."); Lauer v. Dahlberg, 717 F. Supp. 612, 613 (N.D. Ill. 1989), aff'd, 907 F.2d 152 (7th Cir. 1990) (officer was entitled to rely on facially valid warrant despite having been presented with an uncertified copy of a warrant recall order). Because Plaintiff cannot establish this element as a matter of law, the court grants summary judgment in the United States' favor and against Plaintiff on his negligent investigation claim.

### a. Discretionary Function Exception

Moreover, the court notes that if DUSM Perosky had sought to investigate which federal rules of procedure and USMS policies applied to the arrest warrant, the discretionary function exception to the FTCA would apply.

The United States, as a sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Berti v. V.A. Hosp., 860 F.2d 338, 339 (9th Cir. 1988). The FTCA waives the sovereign immunity of the United States in tort actions and vests federal district courts with exclusive jurisdiction over suits arising from the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office

or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The FTCA is subject to a number of exceptions, including the discretionary function exception, which eliminates any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Determining whether the discretionary function exception applies involves a two-step analysis. First, the court examines whether the challenged actions involve "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (quotation omitted). This discretionary act requirement is not satisfied if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). Second, "if the conduct involves some element of choice, the court must determine whether the conduct implements social, economic or political policy considerations." Nurse v. United States, 226 F.3d 996, 1001 (9th Cir. 2000). The Supreme Court has indicated that the "basis for the discretionary function exception was Congress's desire to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in" public policy. Berkovitz, 486 U.S. at 536–37 (internal quotations omitted).

First, any investigation by DUSM Perosky would have been a discretionary act. "Generally, judicial review of alleged negligent investigation by law enforcement is foreclosed by the discretionary function exception." Casillas v. United States, 2009 WL 735193, at *12 (D. Ariz. Feb. 11, 2009), report and recommendation adopted, 2009 WL 735188 (D. Ariz. Mar. 19, 2009); see, e.g., Sabow, 93 F.3d at 1454 ("Although some of the actions and inactions alleged by the [plaintiffs] . . . represent alarming instances of poor judgment and a general disregard for sound investigative procedure, the investigative agents took discretionary action involving considerations of social and political policy."). Plaintiff has not demonstrated that there is a mandatory directive related to how to conduct

such an investigation based on a claim by counsel for the target of an arrest warrant.[2] Deciding which policy applies, that pertaining to civil or criminal arrest warrants, necessarily involves an element of judgment. As a result, DUSM Perosky's investigation would satisfy the first step of the discretionary function analysis.

Second, were such an investigation to be authorized by statue, regulation, or policy, it would clearly be discretionary in nature, involving elements of judgment touching upon policy determinations as to when it is a feasible and appropriate use of USMS resources to second-guess the federal courts. See generally, Gonzalez v. United States, 814 F.3d 1022 (9th Cir. 2016). Because Plaintiff's claim of duty under these facts would clearly trigger the discretionary immunity of the FTCA, there would be no waiver of sovereign immunity, thereby vitiating subject matter jurisdiction.

In sum, because the DUSMs had no duty to undertake this kind of investigation, Plaintiff has failed to establish a necessary element to his negligence claim. What is more, if such an investigation had been undertaken, the discretionary function exception would apply, thereby stripping this court of jurisdiction. Therefore, the court finds that the United States' is entitled to judgment as a matter of law and grants its motion for summary judgment.[3]

---

[2] At oral argument, Plaintiff stated that there is a USMS policy that requires a DUSM to go to the USMS counsel, but could not provide the court with any specific policy number.

[3] Because the court grants summary judgment in the United States' favor based on the lack of a legal duty, the court does not need to reach the United States' arguments regarding the due care exception, causation, and collateral estoppel. With regards to the due care exception, the court notes that under a traditional tort analysis, whether a duty exists must be determined before assessing whether due care was exercised in performing that duty. Plaintiff argues that the DUSMs did not exercise due care, and thus the exception does not apply, because the DUSMs did not investigate whether the warrant could be executed in California after Plaintiff's counsel put DUSM Perosky on notice regarding the geographic limitation. However, the disputed nature of communications on the subject of whether the warrant was capable of execution in California is not material to the analysis of duty. Under either characterization of the communications between

**CONCLUSION**

For the foregoing reasons, the court finds that the United States' is entitled to judgment as a matter of law and grants its motion for summary judgment.

IT IS SO ORDERED.

DATED: July 25, 2018

                                             _____
                                             JEFFREY T. MILLER
                                             United States District Judge

---

Plaintiff's counsel and DUSM Perosky, the duty analysis and the court's conclusion thereon remains the same.